JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT
# OF ARIZONA

| | |
|---|---|
| Patrick W. Bearup,<br>              Plaintiff,<br>vs.<br>Charles L. Ryan, et al.,<br>              Defendants. | No. CV 19-05828-PHX-SPL (MHB)<br><br>**ORDER**<br>**AND**<br>**ORDER TO SHOW CAUSE** |

Plaintiff Patrick W. Bearup, who is currently confined in the Arizona State Prison Complex-Florence, Kasson Unit, brought this pro se civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) former Director Charles Ryan, current Director David Shinn, Warden Kevin Curran, and Deputy Warden Jason Monson. (Doc. 1.) Before the Court is Bearup's Motion for Preliminary Injunction. (Doc. 20.) The Court will order Defendants to show cause why Bearup's Motion should not be granted.

**I.     Background**

Bearup is a Messianic Jew who observes Kosher dietary laws. (Doc. 1 at 6.) In Counts One and Two his Complaint, Bearup alleged that in 2018 and 2019, he was forced to endure PPD tests, which refers to a tuberculin purified protein derivative skin test used to determine if a person is infected with tuberculosis. (*Id.*; Doc. 6 at 3 n.1.) According to Bearup, the PPD injection is a foreign animal by-product containing proteins and is not

Kosher. (Doc. 1 at 6.) Bearup alleged that he objected to the PPD injections and informed staff of his sincerely held religious beliefs and Kosher observance, and he requested an alternative test as an accommodation; however, he was made to endure the injections under threats that staff would use force. (*Id.*) Upon screening, the Court determined that Bearup's allegations sufficiently stated claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) against Shinn and Curran in their official capacities for a policy, custom, or practice to require PPD testing. (Doc. 6 at 11–12.)[1]

On March 24, 2020, Bearup filed his Motion for Preliminary Injunction. (Doc. 20.) He states that ADC Department Order (DO) 1102 requires prisoners to receive an annual PPD test and provides no religious exemption or accommodation. (*Id.* at 1.) In an attached declaration, Bearup avers that on March 24, 2020, nursing staff attempted to inject him with the PPD test. (*Id.*, Attach., Bearup Decl.) Bearup refused the test as he has for the last eight years due to his belief that it violates his religious beliefs and harms his mind, body, spirit, and relationship with God. (*Id.*) He states his willingness to submit to an x-ray or blood test as a least restrictive means of testing. (*Id.*, Attach., Bearup Decl.) Bearup states that he informed the nurse of his pending litigation; however, the nurse told Bearup that he cannot refuse, and that nursing and security staff would return for the test. (Doc. 20 at 2.)

Bearup seeks an order enjoining ADC and/or medical staff from injecting him with PPD fluid. (*Id.*) Bearup argues that he is likely to show at trial that Defendants violated his constitutional rights and that he will suffer irreparable harm absent a preliminary injunction. (*Id.*) He further argues that the threat of harm he faces is greater that the harm prison officials will face if an injunction is issued. (*Id.*) Finally, Bearup asserts that the requested preliminary injunction will serve the public interest. (*Id.*)

---

[1] Bearup's RLUIPA claims against Shinn and Curran are set forth in Counts One and Two of his Complaint. (Doc. 1 at 6–7.) Bearup also alleged, and the Court recognized, RLUIPA claims based on denial of photographs (Count Three) and religious holiday observances (Count Eight), and an Eighth Amendment threat-to-safety claim (Count Five). (*See* Doc. 6 at 22.) These claims in Counts Three, Five, and Eight are not related to the pending request for injunctive relief.

1    Defendants Curran and Shinn oppose the Motion and contend that Bearup only cited the elements of the *Winter* test, which governs preliminary injunctions, but that he failed to address those elements and therefore cannot meet his burden of proof for a preliminary injunction. (Doc. 24.)

Bearup did not file a reply in support of his Motion. Instead, on April 22, 2020, the Court received a Notice from Bearup informing the Court that he has been placed in solitary confinement/quarantine for COVID-19, and he provided his updated address information. (Doc. 26.) He states that at this time, he has no access to his property, legal work, legal mail, etc.; however, a staff member provided the supplies for him to send this Notice. (*Id.*) Bearup states that he does not know how long he will be in quarantine, and he asks the Court to forgive any reply lapses that may occur. (*Id.*) Two days later, the Court received another filing from Bearup, in which he states that he has tested positive for COVID-19 and is currently very sick and undergoing various treatments. (Doc. 27.) He reiterates that he is without his property, files, and paperwork and is unable to communicate. (*Id.*)

## II.   Preliminary Injunction Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance*

*for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this "serious questions" version of the sliding-scale test, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. *See Alliance for the Wild Rockies*, 632 F.3d at 1135.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination" and makes it difficult for a party to procure supporting evidence in a form that would be admissible at trial. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). As a result, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). In addressing a motion for preliminary injunction, a court may consider evidence or developments that postdate the pleadings. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

When evaluating the merits of a preliminary injunction motion, a court's factual findings and legal conclusions are not binding at trial on the merits. *Camenisch*, 451 U.S. at 395.

**III. Discussion**

    **A.    Likelihood of Success/Serious Questions**

RLUIPA provides "very broad protection for religious liberty"; it "protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief[.]'" *Holt v. Hobbs*, 135 S. Ct. 853, 859, 862 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 696 (2014), and 42 U.S.C. § 2000cc-5(7)(A)); *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs"). Under RLUIPA, a prisoner must first show that the relevant exercise of religion is grounded in a sincerely held religious belief and not some other motivation. *Holt*, 135 S. Ct. at 862. Next, the prisoner bears the burden of establishing that a prison policy constitutes a substantial burden on that exercise of religion. *Id.*; *Warsoldier*, 418 F.3d at 994 (citing 42 U.S.C. § 2000cc-2(b)). A substantial burden may be one that makes the religious practice more difficult or penalizes the practitioner for engaging in it, or that withholds a benefit from the practitioner for his religious exercise. *See Warsoldier*, 418 F.3d at 995. If the prisoner makes those two showings, the burden shifts to the government to prove that the substantial burden on the prisoner's religious practice both furthers a compelling governmental interest and is the least restrictive means of doing so. *Warsoldier*, 418 F.3d at 995.

Thus, to establish a likelihood of success on the merits of his RLUIPA claim, Bearup must show that observing Kosher dietary laws is grounded in a sincerely held religious belief and that the ADC policy requiring yearly PPD tests substantially burdens that exercise of his religion. In his declaration and verified Complaint, Bearup avers that his desire to keep Kosher is grounded in a sincerely held religious belief, and that the PPD injection contains ingredients and proteins that are not Kosher and thus he objects to the PPD injections. (Doc. 20, Attach., Bearup Decl.; Doc. 1 at 6.) Bearup cites to DO 1102, which provides that prisoners are to receive PPD tests annually, and it only exempts those prisoners who have had a confirmed past positive PPD or history of tuberculosis. (Doc. 20 at 1.) *See* DO 1102, *Communicable Disease and Infections Control*, www.corrections.az.gov/sites/default/files/policies/1100/1102_032519.pdf (last visited May 5, 2020). The policy further provides that if a prisoner refuses to submit to a PPD

test, he will be secured to a maximum restraint chair or bed and tested. *Id.* (DO 1102 § 5.2.) DO 1102 makes no exception for religious adherents whose faith requires them to observe Kosher requirements. Bearup indicates that upon his refusal to submit to PPD tests in 2018 and 2019, he was subjected to threats that force would be used to secure the test, thereby resulting in his compliance over his objections. (Doc. 1 at 6.) Bearup explains his belief that the PPD injections harm his mind, spirit, and religious practice and therefore the prison's policy requiring yearly PPD injections/tests constitutes a substantial burden on that exercise of his religion. (Doc. 20, Attach., Bearup Decl.) With his sworn statements, Bearup has made the requisite showings under RLUIPA that his objection to PPD injections is grounded in his sincerely held religious belief and that the prison policy requiring annual PPD injections for testing substantially burdens his religious practice.

In their Response, Defendants do not address or challenge that Bearup has a sincerely held religious belief and that his objection to PPD injections is grounded in that sincerely held religious belief, nor do they challenge that PPD injections in fact contain ingredients that violate Kosher dietary laws. (*See* Doc. 24.) Defendants also fail to argue or present any evidence that the prison policy requiring yearly PPD testing, by force if necessary, furthers a compelling governmental interest and is the least restrictive means of doing so. Consequently, Defendants have not shown that they are likely to meet their burden under RLUIPA. *See* 42 U.S.C. § 2000cc-2(b).

As stated, Bearup did not file a reply memorandum in support of his Motion for Preliminary Injunction. But under the Local Rules of Civil Procedure, he was not required to do so. LRCiv 7.2(d) (providing that the moving party may file a reply memorandum "if that party so desires"). Because Defendants did not present any argument to support that DO 1102 furthers a compelling governmental interest, and they did not submit any evidence with their Response, there was nothing for Bearup to rebut in a reply. On the record before the Court, Bearup has established a likelihood of success or, at the least, that there are serious questions going to the merits of his RLUIPA claim related to the prison PPD testing policy. *See Alliance for the Wild Rockies*, 632 F.3d at 1135; *see also Republic*

*of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) ("[s]erious questions need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits" ) (internal quotation omitted). Bearup therefore satisfies the first *Winter* element.

### B. Irreparable Injury

The movant carries the burden by a "clear showing" to establish the likelihood of irreparable harm. *See Mazurek*, 520 U.S. at 972. The movant must show injury or threatened injury at the time relief is being sought. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976).

"When an alleged deprivation of a constitutional right is involved, such as the right to . . . freedom of religion, most courts hold that no further showing of irreparable injury is necessary." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Practice and Procedure § 2948.1 (3d ed. 2013)). Indeed, the Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373. This principle applies equally to RLUIPA violations "because RLUIPA enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citing 42 U.S.C. § 2000cc-3(g) ("[t]his chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution")); *see Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (irreparable harm accompanies a substantial burden on an individual's right to free exercise of religious under the Constitution or a federal statute); *Staples v. N.H. State Prison, Warden*, No. 14-cv-473-LM, 2015 WL 4067139, at *25 (D. N.H. July 2, 2015) (because the record shows the plaintiff is likely to succeed on the merits of his RLUIPA claim, he has proven a likelihood of irreparable harm). In finding that the plaintiff was subject to irreparable injury in *Warsoldier*, the Ninth Circuit considered that as long as the plaintiff refused to comply with the grooming policy and cut his hair, he was subject to "continual punishment" and

forced to choose between following his religious beliefs and suffering more punishment or abandon his beliefs to avoid such punishment. *Warsoldier*, 418 F.3d at 1001.

Here, Bearup has shown that when he refuses or objects to the PPD injection, he is subject to injection by physical force. This threat of force has pressured Bearup to modify his behavior and violate his beliefs by receiving the non-Kosher injections. This constitutes an infringement on the free exercise of his religion. *Id.* ("putting substantial pressure on an adherent to modify his behavior and to violate his beliefs infringes on the free exercise of religion") (internal quotation omitted). In addition, Bearup averred that the day he filed his Motion, he was asked to submit to another PPD test; thus, he is presently being threatened to abandon his beliefs to avoid punishment in the form of having to endure a PPD injection by physical force.

In short, Bearup has shown that he faces the possibility of irreparable injury absent an injection barring enforcement of the PPD testing policy, and he satisfies the second *Winter* element.

### C. Balance of Hardships

To assess the balance of hardships, the Court "balance[s] the interests of all parties and weigh[s] the damage to each." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (citing *L.A. Mem'l Coliseum Comm'n v. N.F.L.*, 634 F.2d 1197, 1203 (9th Cir. 1980)). "[T]he fact that a case raises serious First Amendment questions compels a finding that . . . at the very least the balance of hardships tips sharply in [favor of the party alleging First Amendment injury]." *Sammartano v. First Judicial Dist. Court, in & for Cnty. of Carson City*, 303 F.3d 959, 973 (9th Cir. 2002) (quotation omitted), *abrogated on other grounds by Winter*, 555 U.S. at 22. As mentioned above, RLUIPA enforces First Amendment freedoms; "[i]n its most basic protections, RLUIPA mimics the First Amendment." *Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006). It follows that a case raising serious questions under RLUIPA compels a finding that the balance of hardships tips in favor of the prisoner seeking relief from a RLUIPA violation.

In their Response, Defendants assert generally that Bearup failed to address this balancing element. (Doc. 24 at 2.) But Bearup expressly argues that the threat of harm he faces is greater than the harm prison officials will face if an injunction issues. (Doc. 20 at 2.) Bearup presents facts supporting that he has been damaged in the past due to the policy requiring PPD injections and that he is presently threatened with the same injury. (*Id.* at 1–2; Doc. 1 at 6.) He also presents facts indicating that there are alternative methods to test for tuberculosis (a chest x-ray or blood test), thereby supporting that Defendants will not be damaged if they are unable to perform the PPD test. (*Id.*, Attach., Bearup Decl.) Defendants do not refute any of these facts, and they present no argument that they will suffer damage if the Court grants an injunction. More importantly, the Court has determined that Bearup raises serious questions going to the merits of his RLUIPA claim.

On this record, the balance of hardships tips in Bearup's favor.

### D. Public Interest

"The Supreme Court has recognized RLUIPA as 'the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens . . . .'" *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)). By passing RLUIPA, Congress conclusively determined the national public policy to provide broad protections for prisoners' religious exercise. Enjoining Defendants from enforcing a testing policy that infringes on Bearup's religious exercise therefore advances the public interest. Defendants proffer no argument to the contrary. Accordingly, Bearup satisfies this last *Winter* element.

## IV. Order to Show Cause

Bearup's notice indicating that he is currently in quarantine and very sick due to COVID-19 is concerning. It is not clear what the status is regarding the annual PPD test that nursing staff attempted to administer to Bearup on March 24, 2020, or whether the requirement for the PPD test may be eliminated due to other testing he has undergone as part of treatment for COVID-19.

For this reason, and considering Bearup's well-taken Motion and the lack of any

substantial opposition, the Court will order Defendants Shinn and Curran to respond to this Order and show cause why Bearup's Motion for Preliminary Injunction should not be granted. Defendants will also be required to file a Notice with a declaration from an appropriate official with personal knowledge certifying that, despite his quarantine status, Bearup timely received a copy of this Order and a copy of Defendants' response to the Order to Show Cause.

**IT IS ORDERED:**

(1) The Clerk of Court must update Plaintiff's address on the docket to:

ASPC-Florence Kasson 3-B-14
P.O. Box 8200
Florence, Arizona 85132-8200

(2) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion for Preliminary Injunction (Doc. 20).

(3) A ruling on Plaintiff's Motion for Preliminary Injunction (Doc. 20) is **stayed**.

(4) Within **7 days** of the date of this Order, Defendants Curran and Shinn must respond to this Order and show cause why the Court should not grant Plaintiff's request for injunctive relief.

(5) Within **1 day** of filing their response to the Order to Show Cause, Defendants must file a Notice with a declaration from an appropriate official certifying that Plaintiff received a copy of this Order and a copy of Defendants' response to this Order.

(6) Plaintiff may file a reply to Defendants' response within 7 days of service of Defendants' response.

Dated this 11th day of May, 2020.

Honorable Steven P. Logan
United States District Judge